IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LABRANDE MARQUESE HUGHLEY, ) | |
| # 262092, ) | |
| ) | |
| Petitioner, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | 3:18-cv-1041-WKW-CSC |
| ) | (WO) |
| CHRISTOPHER GORDY, *et al.*, ) | |
| ) | |
| Respondents. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the Court is Labrande Marquese Hughley's petition for writ of habeas corpus under 28 U.S.C. § 2254 by which Hughley challenges his 2013 murder conviction entered in the Circuit Court of Lee County, Alabama. Doc. 1.[1] For the following reasons, the Magistrate Judge RECOMMENDS that Hughley's § 2254 petition be denied without an evidentiary hearing and that this case be DISMISSED with prejudice.

**I. BACKGROUND**

On October 3, 2013, a Lee County jury found Hughley guilty of murder, in violation of ALA. CODE § 13A-6-2.[2] Doc. 13-6 at 139. After a sentencing hearing on November

---

[1] References to "Doc(s)." are to the document numbers of the pleadings, motions, and other materials in the Court file, as compiled and designated on the docket sheet by the Clerk of Court. Pinpoint citations are to the page of the electronically filed document in the Court's CM/ECF filing system, which may not correspond to pagination on the "hard copy" of the document presented for filing.

[2] To provide a brief summary of the trial evidence, this Court quotes from the Alabama Court of Criminal Appeals' opinion in Hughley's direct appeal:

> David Lyles was pronounced dead on September 30, 2012, at 3:32 a.m. The forensic pathologist concluded that Lyles died from multiple gunshot wounds to the face, chest, and

25, 2013, the trial court sentenced Hughley to 624 months in prison. Doc. 13-6 at 152. Hughley appealed to the Alabama Court of Criminal Appeals, where his appellate counsel filed a no-merit "*Anders* brief"[3] stating he could find no meritorious issues for review. Hughley submitted his own issues in a *pro se* brief arguing that the trial court erred by (1) admitting a witness's prior inconsistent statement and (2) denying the defense's motion for judgment of acquittal.

On July 11, 2014, by unpublished memorandum opinion, the Alabama Court of Criminal Appeals affirmed Hughley's conviction and sentence. Doc. 7-1. Hughley applied for rehearing, which was overruled. He then filed a petition for writ of certiorari with the Alabama Supreme Court, which that court denied on September 12, 2014. Doc. 7-2.

On August 20, 2015, Hughley filed a petition in the trial court seeking post-conviction relief under Rule 32 of the Alabama Rules of Criminal Procedure. Doc. 13-7 at 16. In his Rule 32 petition, as later amended, Hughley asserted claims that (1) the State failed to establish a prima facie case of murder; (2) the trial court erred in instructing the jury on flight; (3) trial counsel was ineffective for failing to object to the trial court's jury instruction on flight; (4) trial counsel was ineffective for failing to discover two witnesses

---

leg. The State called Lorenz[a] Black to the stand, who testified that he was standing next to Hughley and Lyles when the shooting occurred. Black testified that Lyles asked Hughley what Hughley was "fixing" to do, "shoot me?" He further testified that Hughley asked Lyles the same question. After this exchange, Black testified that Hughley shot Lyles three times. Black said that he saw the muzzle of the gun, the flashes, and heard the loud sounds. There was also testimony that, just prior to the shooting, Lyles had asked Hughley to leave Lyles's property.

Doc. 7-1 at 3–4.

[3] *Anders v. California*, 386 U.S. 738 (1967).

who could have testified that Hughley was not the shooter; (5) trial counsel was ineffective for failing to adequately investigate the criminal history of State's witness Lorenza Black in order to impeach Black at trial; and (6) appellate counsel was ineffective for failing to assert a claim regarding trial counsel's inadequate investigation of Black's criminal history. Doc. 13-7 at 16–200; Doc. 13-8 at 1–34.

On July 20, 2016, the trial court entered an order dismissing all but one claim in Hughley's Rule 32 petition. Doc. 13-8 at 120–28. In the same order, the trial court set an evidentiary hearing on Hughley's sole remaining claim: Whether Hughley's trial counsel was ineffective for failing to adequately investigate Lorenza Black's criminal history in order to impeach Black at trial? Doc. 13-8 at 128. After appointing counsel to represent Hughley, the trial court held the evidentiary hearing on this claim on October 7, 2016. Doc. 13-9 at 40–81. On September 7, 2017, the trial court entered an order denying Hughley relief on the claim and denying the Rule 32 petition. Doc. 13-9 at 34–38.

Hughley appealed the denial of his Rule 32 petition, pursuing only his claim that his trial counsel was ineffective for failing to adequately investigate Lorenza Black's criminal history in order to impeach Black at trial. Doc. 7-3. On July 27, 2018, the Alabama Court of Criminal Appeals issued a memorandum opinion affirming the trial court's judgment denying Hughley Rule 32 petition. Doc. 7-5. Hughley applied for rehearing, which was overruled. Hughley filed a petition for writ of certiorari with the Alabama Supreme Court, which that court denied on October 12, 2018. Docs. 13-10, 13-11.

Hughley filed this § 2254 petition on December 13, 2018. Doc. 1. In his petition, Hughley reasserts his claim that his trial counsel was ineffective for failing to adequately

3

investigate Lorenza Black's criminal history in order to impeach Black at trial. Doc. 1 at 6–7; Doc. 1-2. Respondents argue that the state courts correctly adjudicated, and denied, this claim on the merits. Doc. 7 at 3–5.

## II.  DISCUSSION

A.    **AEDPA Standard Of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") modified the federal courts' role in reviewing state prisoner habeas applications to prevent "federal habeas 'retrials'" and to ensure that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693 (2002). For a claim adjudicated on the merits by the state courts and properly before the federal court, a writ of habeas corpus shall be granted only if the prior adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" federal law under § 2254(d)(1) "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell*, 535 U.S. at 694. Under the "unreasonable application" standard, this court may grant a writ only if the state court identified the correct governing federal legal principle but applied that principle to the facts of a petitioner's case in an objectively unreasonable way. *See*

*Williams v. Taylor*, 529 U.S. 362, 411–13 (2000) (O'Connor, J., delivering the opinion regarding Part II). "Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. *See Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). The reviewing court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter,* 562 U.S. 86, 102 (2011).

The Supreme Court has reemphasized this deferential standard, holding that "[t]he state court decision must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citation omitted). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

As for the unreasonable-determination-of-facts prong under § 2254(d)(2), the federal court "may not characterize these state court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain,* 576 U.S. 305, 313–14 (2015) (citation omitted). "If [r]easonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination." *Id*. at 314 (quotation

marks and citations omitted). Factual issues made by a state court are presumed correct, and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B.    Hughley's Claim of Ineffective Assistance of Counsel**

Hughley's sole claim in his § 2254 petition is that his trial counsel rendered ineffective counsel by failing to adequately investigate State's witness Lorenza Black's criminal history in order to impeach Black with prior convictions. Doc. 1 at 6–7; Doc. 1-2.

Hughley acknowledges that his trial counsel searched the Alacourt database using Black's name and found two prior convictions, which were too remote to be used for impeachment, but he argues that it was unreasonable for his counsel not to conduct additional searches on Alacourt using Black's social security number or birthdate. Doc. 1 at 7; Doc. 1-2 at 1–7. According to Hughley, had his counsel conducted the additional searches, counsel would have discovered at least three additional convictions admissible to impeach Black. Doc. 1 at 7; Doc. 1-2 at 1–4. Hughley maintains that he was prejudiced by counsel's performance because, he says, Black was the only witness who testified that he actually saw Hughley shoot the victim and impeaching Black's credibility with his prior convictions would have altered the outcome of the trial. Doc. 1 at 7; Doc. 1-2 at 4–7.

At the evidentiary hearing on the Rule 32 petition, Hughley offered into evidence case-action-summary sheets for prior convictions that Hughley says his trial counsel should have discovered during pretrial investigation and then used to impeach Lorenza Black. Specifically, Hughley's Rule 32 counsel offered case-action-summary sheets for the following: a 2000 municipal conviction for giving a false name to a police officer under

the name "Lorenza Black" with a birth date listed as January 1960 (Doc. 13-9 at 82–83); a 2005 conviction for unlawful possession of a controlled substance under the name "Lorinza Black, Jr." with no date of birth listed (Doc. 13-9 at 84–85); a 2006 conviction for unlawful possession of a controlled substance under the name "Lorinza Black" with no date of birth listed (Doc. 13-9 at 86–87); and a 2009 conviction for unlawful possession of a controlled substance under the name "Lorinza Black" with no date of birth listed (Doc. 13-9 at 88–89). When the trial court questioned whether all these convictions were for the same person and whether they were for the same Lorenza Black who had testified for the State at Hughley's trial, Rule 32 counsel indicated that "the Alacourt SJIS printout," which counsel didn't attempt to introduce into evidence, indicated that all four convictions were for the same person because the date of birth and last three digits of the social security number for each defendant were the same. Doc. 13-9 at 46–47. The State disagreed, however, noting that the printout showed "as many as four or five different social security numbers," as well as two different dates of birth. Doc. 13-9 at 47. The trial court admitted the case-action-summary sheets into evidence. Doc. 13-9 at 48.

Hughley's trial counsel, Lauryn Lauderdale, testified at the evidentiary hearing on the Rule 32 petition. Lauderdale testified that she received in pretrial discovery a copy of a statement to police made by a man identified as "Lorinzo Black" with a birth date of January 1960; his social security number was also on the statement. Doc. 13-9 at 49–50. Lauderdale stated that she searched Alacourt for "Lorinzo" Black and found no criminal convictions. Doc. 13-9 at 51. She stated that because Hughley had told her that Black had a criminal history, she also searched Alacourt using the spelling "Lorenzo" and found a

7

conviction in 1990 for unlawful distribution of a controlled substance for a man with a birth date of January 1960, and a conviction in 1996 for the unlawful distribution of a controlled substance for a man with a birth date of January 1965. Doc. 13-9 at 51, 60–61. Both those convictions, Lauderdale said, were too remote to be used for impeachment purposes,[4] and the discrepancy in the birth dates led her to question whether the convictions were even for the same person. Doc. 13-9 at 51–52, 62.

Lauderdale testified that she also attempted to learn of Black's prior convictions from the State, requesting via discovery any criminal records of any State witness that indicated convictions for felonies or misdemeanors involving moral turpitude or evidence of pending charges. Doc. 13-9 at 54, 57–58. However, prosecutor Kisha Abercrombie maintained that the State did not provide Lauderdale with such records and did not have to do so. Doc. 13-9 at 58.[5]

Lauderdale stated she didn't search Alacourt using Black's date of birth or his social security number, nor did she search using any other spelling variations of Black's first name, such as "Lorenza," because, she said, there was no indication from Black's witness statement that his name ended with an "a" and not an "o" and, in fact, she only learned

---

[4] Hughley does not question the remoteness of the 1990 and 1996 convictions for use in impeaching Black. Rule 609 of the Alabama Rules of Evidence provides that evidence of a witness's prior conviction may be introduced for the purpose of attacking the credibility of the witness if the crime was punishable by imprisonment in excess of one year, if a period of less than 10 years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date. Ala. R. Evid. 609(a), (b).

[5] Alabama courts have held that a defendant is not entitled to the general disclosure of otherwise attainable information regarding the criminal backgrounds of the State's witnesses. *See Parris v. State*, 885 So. 2d 813, 836 (Ala. Crim. App. 2001); *Wright v. State*, 424 So. 2d 684, 684 (Ala. Crim. App. 1982).

there were different spellings for Black's first name when she spoke to Hughley's Rule 32 counsel. Doc. 13-9 at 53–54. Lauderdale stated that, although she searched two spellings for Black's first name—Lorinzo and Lorenzo—it didn't occur to her that the last letter of his name could have been different. Doc. 13-9 at 53–54. Lauderdale also testified that Black was the only witness who identified Hughley at trial as the shooter and that she impeached him using his prior inconsistent statement to police in which he had said (contra his trial testimony) that he had not seen the actual shooting. Doc. 13-9 at 55–56.

The trial transcript reflects that Lauderdale asked Black multiple questions during cross-examination designed to put his credibility at issue. For instance, Lauderdale established that Black had been drinking on the night of the incident.[6] Doc. 13-5 at 155–56. Further, Lauderdale questioned Black about his apparent confusion over the identities of Hughley and Hughley's father, Mr. Pain:

> A. [by Black:] Mr. Pain said, "What you got your hand behind your back for? What you gonna do, shoot me?"
>
> Q. [by Lauderdale:] Okay. You're calling this gentleman by his father's name?
>
> A. Mr. Hughley. Yes, I am.
>
> Q. Are you sure you got the right guy?
>
> A. I know when his father brought him to the house for the first time.
>
> . . . .

---

[6] Q. [by Lauderdale:] Okay, Had you been drinking that night?

A. [by Black:] Yes.

Doc. 13-5 at 155–56.

> Q. You keep calling him "Pain," his daddy's name. So are you sure you got the right guy?
>
> A. Yes, I am.

Doc. 13-5 at 158.

Moreover, Lauderdale pointed out when cross-examining Black that, although Black claimed to see "the muzzle" and "the flash," he also maintained that he never saw a gun:

> Q. [by Lauderdale:] Okay. But you testified you didn't see a gun?
>
> A. [by Black:] Just the muzzle. I'm saying I just seen the fire, the blast from the shot.
>
> Q. Okay, So you didn't actually see the gun. You just saw a flash of light?
>
> A. Yes.

Doc. 13-5 at 159.

Most significantly, Lauderdale impeached Black with his prior inconsistent statement to Opelika Police Officer Mitchell Allen, in which Black had stated he did not see the shooting. Lauderdale elicited the following matters:

> Q. [by Lauderdale:] Right. But it was you that said, "I didn't see anything"?
>
> A. [by Black: ] No, it wasn't me.
>
> Q. It wasn't you?
>
> A. I seen everything.
>
> . . . .

> Q. Well, let me rephrase it in the way that I think it was said on the video. You "didn't see shit"?
>
> . . . .
>
> Q. Okay. So you say that wasn't you [who said this]?
>
> A. Yea. I say that wasn't me.

Doc. 13-5 at 173–74.

Lauderdale then recalled Officer Mitchell Allen to impeach Black's testimony:

> Q. [by Lauderdale:] Okay, At that time, did you come into contact with Lorenza Black?
>
> A. [Officer Allen:] Yes, ma'am.
>
> . . . .
>
> Q. Okay, Did you ask him what he saw?
>
> A. He didn't give me an opportunity.
>
> . . . .
>
> Q. Did he tell you anything about what happened?
>
> A. Yes, ma'am, he did.
>
> Q. What did he say?
>
> A. His words, quoted, "I didn't see shit."
>
> Q. And if he got on the stand earlier and said he didn't say that, would that be a mistake on his part?
>
> A. Yes, ma'am, I believe so.
>
> Q. Okay.

Doc. 13-6 at 29–30.

Finally, Lauderdale also attacked Black's credibility during closing arguments, stating:

> And on that DVD you heard Lorenza Black, and I'm gonna use his words, "I didn't see shit." He wasn't even asked, but he's already in a defensive posture. "I didn't see shit." And then he wants to come back and say I saw the whole thing? That's a problem, folks. . . .
>
> . . . . All they have is Lorenza Black, who lied to you on the stand. He acted like he was the defendant. He said, "I didn't see shit" on the video, he refused to sign statements, and he got defensive on the stand.

Doc. 13-6 at 75, 96.

In its order rejecting Hughley's claim that Lauderdale rendered ineffective assistance of counsel, the trial court found:

> Even if Hughley established that Lauderdale's failure to discover the variations on Black's name and impeach him with his prior convictions was [deficient], he has not proved by a preponderance of the evidence that this led to an unfair or unreliable result.
>
> . . . .
>
> Lauderdale did impeach Black's credibility by employing his prior statement to police, asking questions to demonstrate he was drinking at the time, and revealing his confusion between Hughley and Hughley's father. The fact that Lauderdale did not find Lorenza Black's prior convictions using an unknown alternate spelling is insufficient to sustain an ineffective assistance of counsel claim. Further, even if Lauderdale had made an error by not impeaching Black with his prior convictions, a defendant is not entitled to error-free counsel. *Phelps v. State*, 439 So. 2d 727, 735 (Ala. Crim. App. 1983). Hughley failed to establish by a preponderance of the evidence that Lauderdale's counsel was [deficient] or that, even if she had been [deficient], that Hughley was prejudiced by it.
>
> Moreover, the undersigned presided over the proceedings and observed that Lauderdale was very engaged in the proceedings and actively advocated for her client. She was capable, professional, and her performance during trial was adequate.

Doc. 13-9 at 37–38.

In affirming the trial court's denial of Hughley's Rule 32 petition, the Alabama Court of Criminal Appeals held:

> We cannot say it was unreasonable for counsel not to search the Alacourt database using Black's social security number and/or birth date or using multiple spelling variations for his first name. Counsel searched the Alacourt database and found two prior convictions for Black, which confirmed what Hughley had told her—that Black had a criminal history. Although the two convictions were too remote to be used for impeachment, no evidence was presented indicating that counsel had any reason to believe that Black had more than two prior convictions or that the searches she conducted were insufficient to discover all of his prior convictions. Moreover, even if counsel's performance was deficient, we agree with the circuit court that Hughley was not prejudiced. The record from Hughley's direct appeal reflects that, although Black was the only witness who testified that he saw Hughley shoot the victim, the State presented other, circumstantial, evidence establishing Hughley's guilt. In addition, as the circuit court found, counsel thoroughly impeached Black during cross-examination on a multitude of fronts. It is not reasonably probable that additional impeachment of Black with prior convictions would have altered the outcome of the trial. Therefore, the circuit court properly denied this claim of ineffective assistance of counsel.

Doc. 7-5 at 13 (footnote omitted).

Both the trial court, in its order rejecting Hughley's claim, and the Alabama Court of Criminal Appeals, in its memorandum opinion affirming the trial court's denial of Hughley's Rule 32 petition, referenced to *Strickland v. Washington*, 466 U.S. 668 (1984), as the standard for assessing Hughley's claim of ineffective assistance of counsel. *See* Doc. 13-9 at 37; Doc. 7-5 at 4. *Strickland* sets forth the established federal law on claims of ineffective assistance of counsel and requires that a petitioner alleging ineffective assistance establish that his counsel's performance was deficient and that he was actually prejudiced by the inadequate performance. 466 U.S. at 687. This requires showing both

that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The petitioner must demonstrate that counsel's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 688, 694.

An attorney's performance is presumed to have been reasonable and must not be examined aided by judicial hindsight. *Messer v. Kemp*, 760 F.2d 1080, 1088 (11th Cir. 1985). Federal courts apply a "heavy measure of deference to counsel's judgments." *Singleton v. Thigpen*, 847 F.2d 668, 670 (11th Cir. 1988) (quoting *Strickland*, 446 U.S. at 691). A federal court's § 2254 review under *Strickland* is another step removed from the original analysis, or as the Supreme Court puts it, "doubly deferential." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (quotation marks and citation omitted).

Upon consideration of the record and the relevant legal principles, the undersigned finds that the state court decision rejecting Hughley's claim of ineffective assistance of trial counsel was neither contrary to nor an unreasonable application of the *Strickland* standard and that the decision did not involve an unreasonable determination of the facts in light of the evidence presented. Trial counsel Lauderdale's investigation into Black's criminal history for material to be used in impeaching Black was competent and professionally reasonable given the facts known by Lauderdale and the information she found on the Alacourt database. As the Alabama Court of Criminal Appeals found, there is no evidence

14

indicating that Lauderdale should reasonably have believed that Black had more than two prior (remote and inadmissible) convictions or that the searches she conducted on Alacourt were insufficient to discover all of Black's prior convictions. Furthermore, Hughley does not demonstrate prejudice where Lauderdale thoroughly impeached Black, particularly through the evidence of Black's prior inconsistent statement in which Black told police he did not witness the shooting. There is an arguable distinction in the effectiveness of general impeachment by prior conviction versus that of more particularized impeachment by prior inconsistent statement where, as in this case, the witness's prior statement is in direct conflict with his trial testimony that he was an eyewitness to the offense. Here, Lauderdale's focus was to damage Black's credibility by confronting him with a prior statement he had made to police, which contradicted his testimony on direct examination that he saw Hughley shoot the victim. Fairminded jurists could concur with the state court's finding that it was not reasonably probable that additional, general impeachment of Black with his prior convictions would have altered the outcome of the trial when the jury evidently believed Black's trial testimony regarding the shooting, even after considering the prior-inconsistent-statement evidence. Given that this Court must afford deference to the state court's findings, the Court concludes Hughley's ineffective-assistance claim has no merit and is not a basis on which the Court should grant habeas relief.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that Hughley's petition for writ of habeas corpus under 28 U.S.C. § 2254 be DENIED and that this case DISMISSED with prejudice because Hughley fails to demonstrate that the state court decision rejecting his claim was contrary to and an unreasonable application of *Strickland v. Washington* or that the decision involved an unreasonable determination of the facts in light of the evidence presented.

It is further ORDERED that the parties shall file any objections to this Recommendation by **December 16, 2021.** A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations under 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982*). See also Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 2nd day of December, 2021.

                                           /s/ Charles S. Coody  
                                           CHARLES S. COODY  
                                           UNITED STATES MAGISTRATE JUDGE